JOHN A. GRAY, Respondent, v. F. W. COOPER, Appellant.*

In the Springfield Court of Appeals, July 1, 1925.

1. **SALES: Contract for Sale of Clay: Contract to Purchase Greater Amount Binding When Lesser Amount Accepted.** Where contract for sale of three cars of clay provided that, if returns thereon were satisfactory, buyer would give his order for not less than twenty-five more cars, when returns from three cars were received and admitted to be satisfactory, contract became binding for twenty-five cars more without any further order from buyer.

2. **FRAUDS, STATUTE OF: Personalty; Severance: Contract for Sale of Clay Construed.** Contract for sale of clay to be delivered at the railroad was not a contract for the sale of land within the Statute of Frauds, but was contract for the sale of personalty.

3. **SALES: Personal Property: Necessity of Certainty of Amount Sold.** In a sale of personal property, the amount sold must be certainly stated or means for accurately determining the amount provided.

4. ———: ———: **Quantity: Validity of Contract of Sale Not Affected if Amount Sold Can be Ascertained.** In construing a contract for the sale of personal property in order to determine the quantity sold, the rule that that is certain which can be made certain applies, and, if the property is definitely described, the fact that some other act, such as weighing or counting, must be done before the amount can be ascertained does not destroy the validity of the contract.

Gray v. Cooper.

5. **FRAUDS, STATUTE OF: Contract Partly Executed: Acceptance: Delivery: Orders Made Pursuant to Option in Written Contract Not Necessary to be in Writing, Where Part Delivery made in Pursuance of Orders was Accepted.** Under Statute of Frauds (section 2170, Revised Statutes of 1919), where written contract gave buyer option to order any amount of clay in pit up to its capacity, but did not provide how orders should be given, and buyer gave verbal order for all the clay, which was accepted by seller, and part of the clay was delivered and paid for thereunder, the contract then bound the seller to furnish, and the buyer to receive and pay for all the clay in the pit, and evidence by which these facts were shown was competent, though such order was not in writing; such order and contract not being required to be in writing under section 2170, provided there was a part delivery and acceptance of the property purchased, or part payment of the purchase price.

6. **SALES: Adopting Different Method of Payment Than Provided in Contract: Guaranty Provision Abandoned: Seller Could Not Defend on Ground Guaranty Not Given, Where He Had Dispensed with Guaranty.** In action by buyer against seller for breach of written contract to furnish clay, seller could not defend on ground of failure of buyer to furnish written guaranty of payment as provided in contract, where in lieu of such guaranty being made both parties agreed orally that returns from shipments should be sent to a bank and paid over by the bank to them respectively, and payments were made in this manner up to the time of the breach of contract.

7. **EVIDENCE: Parol Testimony: Incompetent to Change Terms of Contract.** Where written contract for sale of clay required buyer to furnish written guaranty of payment of purchase price, oral evidence of dispensing with such provision by arrangement for payments to bank was incompetent for the purpose of showing a change in the terms of the contract.

8. **————: Pleading: Waiver: Parol Testimony: Oral Evidence of Transactions Held Competent to Show Waiver.** In action for breach of contract to furnish clay, oral evidence that parties waived provision of written contract providing for written guaranty of payment by adopting method of having proceeds of sales sent to bank and distributed to them by bank, *held* competent under pleading as tending to establish such waiver, over objection after verdict, altho waiver was not pleaded in express terms, the allegations being that defendant delivered the clay and that plaintiff paid for it as required by the contract, which pleaded facts, together with the unpleaded arrangement with the bank, constituted the waiver; when the facts constituting the waiver are pleaded, it adds noth-

217 Mo. App.—38.

ing to petition to allege waiver in terms, except it is better pleading.

9. **PLEADING: Contracts: Waiver: Should be Pleaded When Relied on.** In action on contracts, if waiver of provisions is relied on, it should be pleaded.

10. **EVIDENCE: Expert Testimony: Experts: Witnesses: Evidence of Experts Held Competent.** In action for breach of contract to furnish clay, under option to take all clay in pit, testimony of experts who drilled holes through clay in pit and estimated amount it contained was competent.

11. ———: ———: ———: ———: **Reference to Plats and Figures: Refreshing Memory.** In action for breach of contract to furnish clay, buyer having option under contract to take all clay in pit, it was not error to permit expert witnesses, who testified as to probable amount of clay in pit, to use a plat and figures thereon to refresh memory, provided such witnesses, after refreshing memory, testified from own knowledge and not from information secured from writing so used.

12. **SALES: Damages: Breach of Contract: Evidence: Measure of Damages.** On breach of contract to sell property, measure of damages is the difference between the market value at place of delivery and the price agreed to be paid, if there be a market value at place of delivery; if there is no such market value, and that fact has been shown, then the value may be otherwise determined.

13. ———: **Evidence: Breach of Contract: Market Value and That There Was no Market Value Not Being Shown, Other Evidence Incompetent.** In action for breach of contract to sell clay, where the evidence did not show the market value of the clay at the place of delivery, nor that there was no market value for clay of the character bought at the place of delivery, all other evidence of value was incompetent.

14. ———: **Damages: Breach of Contract: Nominal Damages Only Can be Recovered, Where no Evidence of Value of Property.** In action for breach of contract to sell clay, where all evidence of value presented was incompetent, plaintiff was entitled to recover only nominal damages.

*Headnotes 1. Sales, 35 Cyc., p. 99; 2. Frauds, Statute of, 27 C. J., Section 130 (Anno); 3. Frauds, Statute of, 27 C. J., Section 327; Sales, 35 Cyc., p. 941; 4. Frauds, Statute of, 27 C. J., Section 327; Sales, 35 Cyc., p. 98; 5. Frauds, Statute of, 27 C. J., 268, 296, 487; 6. Contracts, 13 C. J., Section 765; 7. Evidence, 22 C. J., Section 1697; Frauds, Stat-

ute of, 27 C. J., Section 416; 8. Contracts, 13 C. J., Section 862; Pleading, 31 Cyc., p. 766; 9. Contracts, 13 C. J., Section 862; 10. Evidence, 22 C. J., Section 776; 11. Witnesses, 40 Cyc., p. 2451; 12. Sales, 35 Cyc., pp. 633, 638; 13. Sales, 35 Cyc., p. 631 (Anno); 14. Damages, 17 C. J., Section 59; Sales, 35 Cyc., p. 628, (Anno).

Appeal from the Circuit Court of Phelps County.—*Hon. W. E. Barton,* Judge.

REVERSED AND REMANDED.

*Frank H. Farris,* of Rolla, and *Harry Clymer,* of Steelville, for appellant.

(1) The contract sued on was unilateral and void for want of mutuality. In order to constitute a valid contract there must be mutuality of agreement, and any contract which undertakes to create liability as to one party without liability upon the other is void as to both. Hudson v. Browning, 264 Mo. 58; Reigart v. Coal & Coke Co., 217 Mo. 142; Campbell v. Handle Co., 117 Mo. App. 19; Halloway v. Creamery Co., 286 Mo. 499, 228 S. W. 451; Coal Co. v. Ed. E. Squire Co., 219 S. W. 697-8. The plaintiff admitted he had not given the written guarantee for the payment of the purchase price of the clay, as he contracted to do. Before one party can recover for breach of a contract he must go farther than to show default of the other party; he must show he has performed, or has offered to perform, his part of the contract. This is an imperative requirement of the law. Browning v. Railway Co., 188 S. W. 149; Meyer v. Christopher, 175 Mo. 594; Cement Co. v. Ullman, 159 Mo. App. 251 and 253. The petition in this case alleged full performance by the plaintiff of all the terms and conditions of the contract and there could be no recovery except on that basis. Advertising Co. v. Bank, 242 S. W. 117. The court, in the case just cited, says: ''The petition alleges plaintiff 'carried out and fully performed the contract on its part.' This must be accepted as a plea of performance of all

the conditions of the contract by plaintiff, and having alleged full performance, there is no right of action except on that basis." It was reversible error to admit parol testimony tending to vary, modify or change the terms and conditions of the written contract. The contract was one required by law to be in writing. Plaintiff based his cause of action and right to recover on such written contract, and such contract could not be varied, modified or changed by parol testimony. Warren v. Mayer Mfg. Co., 161 Mo. 112; Mining Co. v. Mining Co., 202 S. W. 288; Refrigerator Co. v. Teasdale Co., 211 S. W. 693; Fuller v. Presnell, 233 S. W. 505; Arky v. Brockman Com. Co., 185 Mo. App. 248, 170 S. W. 353; Rucker v. Harrington, 52 Mo. App. 481; Rogers v. Fremder, 261 S. W. 110. It has long been the rule in this State that a party cannot sue on an express contract and then recover upon a different contract, or upon a modified form of the contract. Carman v. Harrah, 182 Mo. App. 365, 170 S. W. 392; Quigley v. King, 182 Mo. App. 196, 168 S. W. 288; Lumber Co. v. Lumber Co., 253 S. W. 123; Koons v. St. Louis Car Co., 203 Mo. 254; Construction Co. v. Iron Works, 169 Mo. 154. It is also well settled in this State that under a plea of performance in a suit on a contract, proof of waiver of performance or of other excuse for non-performance is inadmissible and evidence of such character cannot be allowed to enlarge the scope of the pleadings. Mould v. Coal Co., 237 S. W. 203; State ex rel. v. Ellison, 192 S. W. 725; Cement Co. v. Ullman, 159 Mo. App. 235, 140 S. W. 620. If a contract has been modified the party suing thereon must plead and stand on the modification. Lumber Co. v. Lumber Co., 253 S. W. 123; Koons v. St. Louis Car Co., 203 Mo. 259. The trial court erred in permitting the witness Krusen to refresh his memory by referring to a plat and to memoranda. This plat and memoranda were not made by him and it was not shown that he knew them to be correct, or that they were correct. Traber v. Hicks, 131 Mo. 180. Assuming, but not conceding, the contract

was enforceable, and that plaintiff had a cause of action on account of its breach, what was his measure of damages? The measure of damages was the difference between the contract price and the market value of the clay at the place of delivery at the time of the breach. Flour Mills Co. v. Miller, 238 S. W. 510; Riddle v. Castner, 202 Mo. App. 584, 209 S. W. 127; Mayo v. Brokerage Co., 218 S. W. 933; Brown v. Asphalt Co., 210 Mo. 273. The burden was on the plaintiff to show the damages, if any, he had sustained. Brown v. Asphalt Co., 210 Mo. 274; Flour Mills Co. v. Miller, 238 S. W. 511. He failed to meet this requirement of the law, as there was not a particle of evidence of the value of the clay at St. James, Mo., and no evidence that there was no market for such product there, consequently there was no evidence to warrant any finding and judgment for the plaintiff, unless it be for nominal damages. Flour Mills Co. v. Miller, 238 S. W. 511. Speculative profits are not recoverable in an action for damages on account of breach of contract. Implement Co. v. Machine Co., 268 Mo. 363. Instruction No. 1 given for the plaintiff was erroneous. In that instruction the court told the jury that if defendant entered into a contract with the plaintiff whereby defendant agreed to sell and the plaintiff agreed to buy three cars of clay for shipment, and if returns thereof were satisfactory to plaintiff that plaintiff would given defendant an order for twenty-five or more cars, not exceeding the capacity of the pit, and if said three cars were furnished and shipped and returns were satisfactory to plaintiff, and if plaintiff then gave defendant an order for the entire product of said pit, and that defendant proceeded to mine and deliver clay then "said order was accepted by defendant and constituted a contract between said parties for the entire capacity of the pit" and if defendant refused to deliver the remainder of the fire clay in the pit they should find the issues for the plaintiff. This suit was based on a written contract, plaintiff pleading full performance. This instruction

broadened the issues made by the pleadings; in fact it submitted issues not raised by the pleadings, and is clearly erroneous. Tucker v. Bank & Trust Co., 251 S. W. 409; State ex rel. v. Ellison, 270 Mo. 653, 195 S. W. 724; State ex rel. v. Melton, 251 S. W. 448; Fadler v. Dry Goods Co., 251 S. W. 141. Instruction No. 2 given for the plaintiff is manifestly erroneous. By it the jury was instructed that if plaintiff arranged with the St. James State Bank and the parties to whom clay was shipped whereby returns were to come to the bank, and the bank was to pay defendant, and defendant accepted and acted upon such arrangement, then no guarantee was necessary. It substituted an alleged arrangement made by the plaintiff with third parties for, and in the place of, the written condition of the contract between the plaintiff and defendant. It permitted recovery on the part of the plaintiff, notwithstanding he had not complied with the contract; in fact, it told the jury that plaintiff did not have to comply with the terms of the contract, but could substitute an arrangement of his own. The well-established rule in this State is that instructions cannot be broader than the pleadings, whatever may be the scope of the evidence, and an instruction which submits issues not raised by the pleadings is reversible error. Young v. Dunlap, 195 Mo. App. 119, 190 S. W. 1043; Paper Co. v. Shilkee, 237 S. W. 111; Tucker v. Bank & Trust Co., 251 S. W. 409; State ex rel. v. Melton, 251 S. W. 448. A plaintiff must put his case to the jury upon the precise case made by his petition and proof. And while the petition may be broader than the proof, the proof must not be broader than the petition, and the instructions must not be broader than the proof thus limited by the petition. Simms v. Dunham, 203 S. W. 653; McKenzier v. Randolph, 238 S. W. 829. No rule is better settled in this State than that instructions must be confined to the issues raised by the pleadings and supported by the evidence within the limits of the pleadings. Florina v.

Railroad, 260 S. W. 125; Degonia v. Railroad, 224 Mo. 589.

*Jones Bros.* and *Lortz & Breuer,* of Rolla, for respondent.

(1) The contract between plaintiff and defendant is mutual and reciprocal, and by the weight of relevant authority the contract was not lacking in either consideration or mutuality. (a) Rozier v. Railroad, 147 Mo. App. 290; Loudenback Fertilizer Co. v. Tennessee Phosphate Co., 121 Fed. 298; Grand Prairie Gravel Co. v. Joe B. Wills Co., 188 S. W. 680; Lima Locomotive & Machine Co. v. Steel Castings Co., 155 Fed. 77; Silver Mining Co. v. Smelting & Ref. Co., 16 Colo. 118; Ramey Lumber Co. v. Schroder Lumber Co., 237 Fed. 39; Warren v. Coal Co., 200 Mo. App. 442; Baker v. Railway Co., 91 Mo. 157; Clein v. Johnson, 191 Mo. App. 453; Moss v. Green, 41 Mo. 390; Scriba v. Neely, 130 Mo. App. 258; Green v. Whaley, 271 Mo. 654; 13 Corpus Juris, 339. (b) To make a contract unilateral and thereby void, it is essential that there should be no mutuality of obligation, that only one party thereto should be bound. Royal Brewing Co. v. St. Louis Brewing Association, 188 Mo. App. 679; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137; Eaton v. Coal Co., 125 Mo. App. 194. (c) The contract in question being an obligation on the part of defendant to sell and deliver and plaintiff to buy and pay for, makes it a mutual contract and bilateral. 13 Corpus Juris, 339; Meier Dental Mfg. Co. v. Smith, 237 Fed. 563; Ayer Tie Co. v. O'Bannon, 174 S. W. 783; Binder v. Binder, 187 S. W. 735. (d) A contract which might have lacked mutuality at first, becomes binding by performance. Reynolds v. Walsh-Griffith Tie & Lumber Co., 227 S. W. 438; 6 Ruling Case Law, 686; Molloy v. Egyptian Tie & Timber Co., 247 S. W. 469; Rozier v. Railroad, 147 Mo. App. 298; Railroad Co. v. Coyl, 8 L. R. A. (N. S.) 433; Herrick v. Wardwell, 58

Ohio St. 299, 288 S. 255; Martin v. Ray County Coal Co., 232 S. W. 152. (e) A contract, although lacking in mutuality, is made binding on the parties thereto in which the parties agree with each other, one undertaking to furnish the product up to capacity, and the other to take and pay for it, which agreement had been largely carried out before one party elected to stop performance. Rozier v. Railroad, 147 Mo. App. 298; National, etc., Co. v. National, etc. Co., 155 Fed. 77; 11 L. R. A. (N. S.) 713; Wells v. Alexander (N. Y.), 15 L. R. A. 218; Coal Blast, etc. Co. v. Bolton Nut Co., 57 L. R. A. 692; Lumber Co. v. White Breast Coal Co., 160 Ill. 85. The case in hand is to be distinguished from the case of Campbell v. Am. Handle Co., 117 Mo. App. 19, where there was no agreement to sell the whole yield of the factory, but simply to sell and deliver to the defendant, timbers of certain length, without in any way designating the quantity. Also distinguished from the case of Hudson v. Browning, cited in defendant's brief, 264 Mo. 58, where one party to the contract specified he was not being bound to make or purchase and deliver the full quota of ties, but only to use every effort at their command to secure as many as possible. (2) As an abstract proposition of law it is true that parole evidence is inadmissible for the pur pose of varying the terms of a written contract, but in this case a subsequent oral agreement between the parties changed the manner of making remittances from shipments of clay to defendant from a written guarantee for the payment of same as provided in the contract, to making such remittances through the bank, which substituted agreement was strictly lived up to by both par- ties thereafter until defendant saw fit to breach the contract. The contention of appellant is that his agreement and his waiver of this provision and his conduct, attitude and acts thereafter in conformity therewith is not a waiver or forfeiture of the provision in the original contract which he changed and repudiated, and his contention further is that he can forfeit and breach his writ-

ten contract with impunity and defend on the ground that the verbal agreement so made between plaintiff and himself justifies his breaching the contract. This is not the law of this State, and in the language of a learned judge formerly of this court, "It certainly needs no citation of authorities to support this principle of law." Phillips v. Todd, 180 S. W. 1041; Thompson v. Trader's Co., 169 Mo. 12; Polk v. Western Insurance Co., 114 Mo. App. 514. The contract in this case was fully performed by the plaintiff and he was entitled to recover for a breach of said contract when the defendant refused to deliver the clay in said pit to plaintiff. In the case at bar the defendant Cooper agreed to the change in the contract as to the method of payment, accepted the St. James State Bank as paymaster instead of the written guarantee, and received his money for each shipment of clay as made, covering a period of six months time, and thereby waived the requirement of the plaintiff to give a written guarantee for the payment of said clay. If a contract includes provisions which if not complied with, involve a forfeiture, and the party for whose benefit the provision is inserted, knowing the other party is not complying with them, makes no objection and acquiesces therein, he waives the forfeiture. Hersch v. Insurance Co., 130 Mo. App. 462; Riley v. Insurance Co., 117 Mo. App. 229. Under the allegation of the performance by plaintiff of all conditions of the contract, it is admissible to show proof of waiver of the compliance to the said contract. St. Louis Steam Heating & Ventilating Co. v. Bissell, 41 Mo. App. 431. Judge Biggs, speaking for the court in the last cited case, says: "The rule is that under allegation of performance the plaintiff may introduce proof of waiver of any conditions of the contract by the defendant." Russell v. Insurance Co., 55 Mo. 585; Schulz v. Insurance Co., 57 Mo. 331; Estel v. Railroad Co., 56 Mo. 282. The strict performance of a contract may be waived. A person for whose benefit anything is to be done, may if he pleases, dispense with any

part of it, or the circumstances in the mode of perform-
ance. Where he is present to receive performance, what-
ever is not exacted is considered as waived, for if ob-
jections had been made on the ground of those matters
in which the proposed performance was deficient, these
might have been supplied at the time, and therefore it
is not proper to surprise the party who performed the
act, by objections to the mode of performance, after his
vigilance has been disarmed by an apparent acquiescence,
for that would be a fraud. 6 Ruling Case Law, page 990,
sec. 358; Robertson v. Smith, 11 Texas Report, 211, 60
Am. Dec. 234. (3) The defendant contends that the
trial court erred in permitting the witness Krusen to
testify, or to refresh his memory by referring to a plat
and memoranda in his testimony pertaining to the amount
of clay that was contained in the pit of defendant. The
evidence showed that the plat was made from notes sent
in by the witness Krusen to the office of the American
Refractory Co., that the notes were made by the witness
Sam Taylor, who assisted the witness Krusen in drilling
the pit; that said notes were checked by Krusen and
sent in to the home office of the company, where the plat
was prepared and from which the witness was allowed
to refresh his memory. Where a witness' recollection
is hazy, his memory may be refreshed by referring to
writings and other memorandum made by the witness, or
known by him to be correct. State v. Patton, 255 Mo.
245. The case of Travers v. Hicks, 131 Mo. 180, and
cited by appellant, is not in point for the reason that
in that case the witness was allowed to refresh his mem-
ory from a memorandum prepared partly by himself and
partly by another, and which witness refused to allow
counsel for defendant in that case to inspect, and refused
to allow the notary to attach it to his deposition. In
the case at bar, the defendant (appellant herein) was al-
lowed to inspect the plat used by witness to refresh his
memory, and was allowed to cross examine the witness
as to his knowledge touching the same. The matter of

refreshing a witness' memory rests largely in the discretion of the trial judge. Wynn v. Modern Woodman of America, 157 Mo. App. 1. A witness may refresh his memory from a memorandum under two conditions: first, when a witness' memory is refreshed or revived by looking at the memorandum so he is able to testify from memory as to the facts; second, when he has no present memory of the matter, but originally knew the facts, and while he knew them, made or verified the memorandum, from which he testifies; it is immaterial in such case who made the memorandum, provided the witness, after looking at it, has a present memory of the facts. Eberson v. Continental Investment Co., 130 Mo. App. 296. (4) It is further contended by appellant that the court erred in admitting evidence which enlarged the scope of the pleadings, having reference to the evidence of remittances to defendant in payment of shipments of clay being made through the bank. This contention is not well taken as has already been shown by authorities hereinbefore cited, but for the further reason that if such evidence was of a character to enlarge the scope of plaintiff's pleadings and thereby misled the appellant to his prejudice in maintaining his defense upon the merits, his remedy was to make an affidavit showing in what respect he had been misled by such evidence, which appellant failed to do. Sec. 1272, R. S. 1919; Mellor v. Missouri Pac. R. R. Co., 105 Mo. 455; Rumbolz v. Bennett, 86 Mo. App. 174; Turner et al. v. Railroad Co., 51 Mo. 501. The appellate court will not consider a complaint that there was a variance between the pleading and the proof unless the complaining party pursued in the trial court the course pointed out in section 1272. Thomas v. Bambrick Bros. Const. Co., 189 Mo. App. 623. (5) The market price of an article is the sum fixed by the consensus of buyers and sellers dealing in the article, and proof of the price obtained at an actual bona-fide sale, though there is but one bidder, is competent on the question of market value; for the term "market" assumes

the existence of trade, and price is fixed in trade by the highest bidder, so in this case when the respondent and appellant agreed on the price of the fire clay to be delivered at St. James, this of itself is sufficient to fix the market value at St. James: Carey Lithograph Co. v. Magazine & Book Co., 127 N. Y. Supp. 300; 3 Words & Phrases (Second Series), page 300; Jackson v. Telegraph Co., 174 Mo. App. 81; Reilly v. Cullen, 101 Mo. App. 32. We, therefore insist that under the law and the evidence, this case was fairly tried, resulting in a verdict and judgment for the right party and that the judgment be affirmed.

COX, P. J.—Action for damages for breach of contract. Plaintiff recovered and defendant appealed.

Defendant, Cooper, was the owner of a pit of clay described as dias pore clay and burley clay, the latter being of cheaper grade than the former. These parties entered into a written contract, the essential parts of which are as follows:

"That party of the first part for and in consideration of the price and sum hereinafter specified agrees to furnish F. O. B. cars, St. James, Mo., two cars of Dias Pore clay and one car of second or Burley clay, if the cars are furnished when the clay is ordered, and if the cars are not furnished when the clay is ordered then to furnish on the tract (on the ground) for the price and sum of $4 per ton of 2000 pounds for the Dias Pore clay and $1.70 per ton for the second, or Burley clay, R. R. weights to govern, and further, after returns of the aforesaid cars are received and the same proves satisfactory to party of the second part, to furnish F. O. B. cars, St. James, Mo., twenty-five or more cars and to furnish in proportion of one car of Burley not to exceed two cars of Burley to four of Dias Pore.

Party of the second part agrees to take the above-named three cars of clay, and to ship same as soon as cars can be procured; party of the second part agrees,

after returns are received on the above mentioned three cars, and said returns prove satisfactory to give his order to party of the first part for not less than twenty-five cars and to pay the price and sum above mentioned, and to ship same as fast as cars can be procured.

Party of the second part hereby agrees to pay the price for the clay above mentioned as follows: 50 per cent when clay is loaded, and balance when returns are received from each shipment.

Party of the second part further agrees to give to party of the first part a written guarantee for payment of the remainder of each shipment when he makes an order for the twenty-five or more cars. .

Both parties agree that the twenty-five cars or more as stated herein shall be taken and construed to mean not less than twenty-five cars nor more than the capacity of the clay pit is now opened up.

Party of the second part further agrees to pay for the Burley or seconds, 50 per cent when same is put on the ground or cars and to pay the balance on each car put on the ground upon receipt of the returns from each car or cars shipped of the Dias Pore clay."

Under the written contract, the three cars mentioned were delivered to plaintiff. He shipped them and got satisfactory returns. He then told defendant to continue to load as long as he had any clay. Also told defendant he would take all the clay in the pit. No written order was given defendant for any clay. Defendant spoke to plaintiff about the written guarantee for the 50 per cent not paid at time of delivery. Plaintiff did not give the written guarantee but the evidence in this case tends to show that with defendant's consent and in lieu of said guarantee, plaintiff arranged orally with a bank for remittances for shipments to be made to the bank and the bank then to pay defendant. The business continued in that way for a period of about six months during which time defendant delivered to plaintiff forty-eight cars of dias pore clay and 1694 tons of burley clay.

Fifty percent of the purchase price was paid as the clay was delivered. The dias pore was then shipped by plaintiff and remittance therefor made to the bank and the bank paid defendant out of this remittance the balance due him on all clay delivered. After business had been conducted in this way for about six months, defendant made some complaint about the arrangements for delivery of burley clay and he and plaintiff had some difficulty about it and defendant then notified plaintiff he would deliver no more clay. Plaintiff then brought this suit for damages on account of the failure of defendant to mine and deliver the clay remaining in the pit.

The first question raised is that the contract was not binding because unilateral and a suit upon it for damages for its breach could not be maintained. It is also contended in the same connection that testimony to show that plaintiff told defendant he would take all the clay in the pit was incompetent because it was an offer to change by parol the terms of a written contract and for the further reason that if plaintiff wished to exercise his option to order more than was specifically provided for in the contract, the order must be in writing.

Defendant in his answer in the case and also in the brief in this court admits, impliedly at least, that the contract was binding as to the first three cars delivered and shipped and the twenty-five cars additional mentioned in the written contract. There can be no question that the contract was a valid and binding contract for the sale of some amount of clay. By its terms when executed, three cars were sold by defendant and bought by plaintiff. We are of the opinion that when the returns for the shipment of the three cars were received and were admitted by plaintiff to be satisfactory, that the contract then became binding for twenty-five cars additional without any further order from plaintiff. This much is practically conceded by appellant. As more than twenty-five cars additional were delivered and paid for we need not discuss further that feature of the con-

tract. We only mention the three cars and the twenty-five cars as showing that the contract was valid and binding when executed. The real question in this case is as to what extent it was binding and what force, if any, was given it by the subsequent action of the parties. Some suggestion was made in oral argument in this court that the clay in the pit was real estate and under the Statute of Frauds, a sale of it must be by written contract which should provide the quantity sold, the consideration and all other parts of the agreement in full and hence an order for any amount of clay must be in writing. We think the appellant is wrong in that position. It is true that while the clay remained in the pit it was part of the real estate but plaintiff did not buy it in the pit. Had he done so and had his contract provided that he should remove the clay from the pit, then appellant's contention would be correct. By this contract, however, plaintiff bought clay delivered at the railroad and he did not buy it in the pit. The defendant was to deliver the clay, hence he must sever it from the soil and convert it into personal property before he could deliver it. The sale was of personal property and that fact must be kept in mind in construing this contract.

In a sale of personal property, the amount sold must be certainly stated or means for accurately determining the amount provided. [Hudson v. Browning, 264 Mo. 58, 174 S. W. 393; Reigart v. Manufacturers Coal & Coke Co., 217 Mo. 142, 117 S. W. 61; Halloway v. Mountain Grove Creamery Co., 286 Mo. 489, 499, 228 S. W. 451; Saginaw Medicine Co. v. Dykes et al., 210 Mo. App. 399, 238 S. W. 556; Malloy v. Egyptian Tie & Timber Co., 212 Mo. App. 429, 247 S. W. 469.]

In construing a contract for the sale of personal property in order to determine the quantity sold, the rule that that is certain which can be made certain applies and if the property is definitely described, the fact that some other act such as weighing or counting must be done before the amount can be ascertained does not destroy the

validity of the contract. [Ficklin v. Finder, 161 Mo. App. 283, 143 S. W. 853; Leesley Brothers v. A. Rebori Fruit Co., 162 Mo. App. 195, 204, 144 S. W. 138; 20 Cyc. 270; 35 Cyc. 100.]

The written contract gave plaintiff the option to order any amount up to the capacity of the pit but did not provide how the order should be given. Appellant contends that if this provision were binding at all, the order must be in writing. We do not agree with that contention. The option to order more clay could be exercised in the same way that the original contract could be executed. That contract was not required to be in writing. Under our statute, section 2170, Revised Statutes 1919, the parties in executing the contract of sale had three options: They could reduce the contract to writing, or make it orally if the purchaser paid part of the purchase price, or could make it orally if the seller delivered and the purchaser accepted part of the property purchased. The fact that the contract which gave the purchaser the right to order more than twenty-eight cars provided for in the contract was in writing did not, in the absence of such a provision therein, take away from the parties the right to proceed under the statute by the purchaser giving an oral order and the seller orally accepting it and delivering thereunder part of the goods purchased. We think that when the verbal order was given and accepted and acted upon by the parties and part of the clay delivered and paid for under this verbal order, the contract then bound the defendant to furnish and the plaintiff to receive and pay for all the clay in the pit and the evidence by which these facts were shown was competent. [Rickey et al. v. Tenbroeck et al., 63 Mo. 563; Martin v. Ray County Coal Co., 288 Mo. 241, 255, 232 S. W. 149; Earle Fruit Co. v. McKinney, 65 Mo. App. 220, 229-30; Hollrah-Dieckman Refrigerator & Fixture Co. v. St. Louis House & Window Cleaning Co., 186 Mo. App. 207, 213, 171 S. W. 576.]

The written contract provided that if plaintiff should order any amount of clay after the returns from the shipment of the first three cars were received, he should, when making the order, give the defendant a written guaranty to secure the payment of one-half of the purchase price which was to be paid when returns from shipments were received. This written guaranty was not given but plaintiff's evidence tends to show that in lieu of it the parties agreed that returns from shipments should be sent to a bank and the bank pay defendant before paying anything to plaintiff. This was acted upon for six months and until forty-eight cars of Dias Pore clay had been delivered and shipped and that, as well as 1694 tons of Burley clay paid for in full out of remittances received by the bank from shipments of clay. When defendant refused to deliver any more clay to plaintiff, he did not refuse because the written guaranty had not been given but because he became offended at plaintiff. The effort to justify his refusal to deliver any more clay on the ground that the written guaranty had not been furnished was clearly an after-thought. He did not base his refusal upon that ground at the time. We do not say that that fact alone precludes him from afterward asserting it. In the first instance plaintiff was bound to furnish the written guaranty and defendant was not required to say anything nor do anything until it was furnished and had he refused to deliver any clay under the contract, no matter what his reason therefor, he could, if sued, have defended upon the ground that plaintiff had not complied with his part of the contract because he had not furnished or tendered the written guaranty, but after having orally agreed with plaintiff to accept the arrangement by which in lieu of the written guaranty the remittances for clay shipped were to be sent to the bank and the bank pay defendant therefor and having acted upon that oral agreement for six months and delivered large amounts of clay that had been paid for in that way it would seem that common honesty and

fair dealing would require that if he did not want to furnish any more clay without the written guaranty he should have notified plaintiff of that fact and have given plaintiff an opportunity to furnish it. Had he done that and had plaintiff refused to furnish the written guaranty defendant would have a much better standing. Plaintiff certainly had not breached the contract at the time defendant refused to deliver any more clay. Up to that time defendant had accepted payment through the bank out of remittances for shipments of clay made by plaintiff in lieu of the written guaranty and then flatly refused to deliver any more clay purely on personal grounds. We are clearly of the opinion that had plaintiff then tendered a written guaranty and demanded the remainder of the clay, he would have been within the letter of his contract, for certainly, the time of executing the guaranty was not of the essence of the contract to such an extent that it could not be waived and defendant did waive it by not insisting upon it before he made any delivery. Having waived that provision of the contract for six months and having made large deliveries of clay without it and having refused to make further deliveries merely because of personal feeling toward plaintiff and without any demand for the execution of the written guaranty, he should be held to have waived it up to that time and when sued for a refusal to furnish any more clay should not now be allowed to say that his refusal was justified because plaintiff had not furnished the written guaranty. The essential parts of the contract were the duty imposed upon defendant to deliver the clay and the duty imposed upon plaintiff to pay for it. The provision for the execution of the written guaranty on the part of plaintiff was for the purpose of affording security to defendant that plaintiff would perform his part of the contract by making payment for the clay as the contract required he should. As long as defendant delivered clay to plaintiff and he paid for it the contract was being performed to the satisfaction of both parties.

We think defendant could have refused to deliver any more clay until the written guaranty was furnished but in order to justify a refusal upon that ground at that time, he should have notified plaintiff and have given him an opportunity to furnish the guaranty. Not having done that, we do not think he can now be heard to say that plaintiff had not tendered literal performance merely because he had not furnished or tendered something that defendant did not ask or want. Defendant having unconditionally refused to furnish any more clay, it would have been a useless formality for plaintiff to have tendered a written guaranty before filing suit. We do not think defendant can now avail himself of the fact that this guaranty was not furnished and assert it as a defense in this action.

The defendant objected to any proof about the arrangement with the bank to make payments on the ground that it was an attempt to vary or change the provision of the written contract and further that if it were intended thereby to show a waiver of the requirement that plaintiff furnish a written guaranty, it was incompetent because waiver had not been pleaded. We do not think the evidence was competent for the purpose of showing a change in the terms of the contract. We do think that it was competent on the question of waiver if the pleadings would admit proof of waiver. We agree with defendant that when waiver is relied on it should be pleaded. We are of the opinion also that, in fact, waiver was, to a limited extent, pleaded, and if that were the only attack upon the judgment in this case, we should be inclined to hold the pleading sufficient after verdict. While there was no direct allegation of waiver of that provision of the contract which required a written guaranty to be, given, there is an allegation that defendant delivered clay under the contract continuously from the 2nd day of December, 1922, to the 7th day of July, 1923, and that plaintiff paid for it as required by the contract. It was this course of business together with the arrange-

ment with the bank that constituted waiver. Had this arrangement with the bank been pleaded, then all the facts constituting waiver would have been pleaded. When the facts are pleaded, it really adds nothing to a petition to allege as a conclusion to be drawn therefrom that the party thereby waived the provision of the contract to which the alleged facts apply. However, on a re-trial, the petition should be amended by making a direct allegation of waiver of the provision of the contract requiring plaintiff to furnish a written guaranty.

Objection was made to testimony of experts who drilled holes through the clay and then estimated the amount of clay in the pit. We think this evidence was competent. There was also objection to an expert witness using a plat and figures thereon to refresh his memory. We see no error in that provided the witness after refreshing his memory testifies from his own knowledge and not from information secured from the writing used to refresh his memory.

It is finally objected that there is no proof of substantial damages. That the measure of damages was the difference in the market value of the clay at the place of delivery and the contract price. If the property has a market value at the place of delivery the difference between that market value and the price agreed to be paid is the measure of damages. If there be no market value at the place of delivery and that fact be first shown then the value may be otherwise determined. The evidence in this case does not show the market value of the clay at the place of delivery neither does it show that there was no market value for clay of the character bought at the place of delivery and for that reason all other evidence of value was incompetent. On the showing made plaintiff could not recover more than nominal damages. [Brown v. Trinidad Asphalt Mfg. Co., 210 Mo. 260, 262-264, 274, 109 S. W. 22.]

Judgment reversed and cause remanded. *Bradley* and *Bailey, JJ.,* concur.